F. Justin MASON, Petitioner,

v.

DIRECTOR OF MOTOR VEHICLES, Agent for the Commissioners of the District of Columbia, Respondent.

No. 3091.

Municipal Court of Appeals for the District of Columbia.

Argued Nov. 19, 1962.

Decided Dec. 28, 1962.

1. See also, Kinney v. Kinney, 90 U.S.App. D.C. 346, 196 F.2d 587.

2. Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146.

Ira M. Lowe, Washington, D. C., for petitioner.

F. Justin Mason also entered an appearance pro se.

Joseph G. Hitselberger, Asst. Corp. Counsel, with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for respondent.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge.

The Chief Hearing Officer of the Driver Improvement Section of the Department of Motor Vehicles served petitioner with notice to show cause why his operating privileges should not be suspended or revoked for permitting an unlicensed operator to operate his motor vehicle in the District of Columbia.[1] After a hearing petitioner's permit was suspended for a period of sixty days. The Director of Motor Vehicles approved the suspension and this appeal followed. Among the several errors assigned, we need consider only those pertaining to the authority of respondent to suspend petitioner's operating privileges and the sufficiency of the evidence supporting the order of suspension.

Congress authorized and empowered the Commissioners of the District of Columbia to make and enforce usual and reasonable traffic rules and regulations and to revoke and suspend operators' permits in cases where a breach of these regulations has

---

1. Section 157(m) of Part I, Traffic & Motor Vehicle Regulations of the District of Columbia, provides: "No owner of * * * a motor vehicle in the District of Columbia shall allow or permit the same to be operated by any individual who is not a duly licensed operator."

been shown.[2] By Commissioners' Order No. 296,973/1–1371A, dated December 30, 1952, as amended,[3] the Director of Motor Vehicles is designated agent of the Board of Commissioners for the suspension, revocation and restoration of motor vehicle operators' permits, with "full authority to issue warning letters, conduct conferences, issue and modify orders of suspension and revocation of operators' permits, to conduct hearings, and to designate paid employees of the Department of Motor Vehicles to act as Hearing Officers for him." Section 2 of the order provides that the Driver Improvement Section of the Department of Motor Vehicles shall perform administrative functions. Section 3 directs that a point system be put into effect for the suspension and revocation of motor vehicle operators' permits and that points be assessed after conviction or forfeiture of collateral. In addition, the Director may, in his discretion, after notice and opportunity for a hearing, suspend an operator's permit without the assessment of points on the basis of a traffic charge pending in a court having jurisdiction of the violation, subject to a final determination of such charge. If the court finds that the operator has committed the violation, points will be assessed according to the schedule set forth in Section 3 of the Commissioners' order. Enforcement provisions of the point system are contained in Sections 4 and 5. Section 5(a) then provides:

"Notwithstanding any of the other provisions of this order, the Director of Motor Vehicles, after giving notice and opportunity for hearing, is hereby authorized in his discretion to suspend or revoke the motor vehicle operator's permit or operating privilege of any individual, who, in his opinion, is *not* physically, mentally or *morally qualified to operate a motor vehicle in such*

*manner as not to jeopardize the safety of persons or property*, or who in his opinion has driven a motor vehicle in such manner as to show a flagrant disregard for the safety of persons or property." (Emphasis supplied.)

Petitioner was not charged with any violation for which points could be assessed by the Director of Motor Vehicles. Prior to receiving the notice to "show cause" from the Driver Improvement Section of the Department of Motor Vehicles, petitioner had been charged in the Traffic Branch of the Municipal Court with violating Section 157(m) and found not guilty. Consequently his permit could not be suspended by respondent under the provisions of Section 3 authorizing suspension of an operator's permit on the basis of a traffic charge *pending* in a court having jurisdiction of the violation. Nor could petitioner be charged under Section 5(a) with *driving* in such a manner as to show a flagrant disregard for the safety of persons or property. Petitioner contends, therefore, that his operator's permit could only be suspended by respondent as a valid exercise of his authority if, in his opinion, petitioner was not "morally qualified to operate a motor vehicle in such manner as not to jeopardize the safety of persons or property," and if the evidence supported such a conclusion.

The government maintains that respondent's authority to suspend an operator's permit is not limited by the provisions of Section 5(a) of the Commissioners' order. It contends that by virtue of Section 1 of the order, respondent is given full authority to act for the Board of Commissioners in the suspension of an operator's permit, and that under the provisions of Code 1961, § 40–302, as interpreted by the United States Court of Appeals in the La Forest case,[4] the Commissioners or their

2. Code 1961, §§ 40–302, 40–602(a); La Forest v. Board of Commissioners, 67 App.D.C. 396, 92 F.2d 547 (1937).

3. Part V, Traffic & Motor Vehicle Regulations of the District of Columbia.

4. La Forest v. Board of Commissioners, *supra* n. 2.

designated agents may suspend an operator's permit where there has been a breach of usual and reasonable rules and regulations made concerning the control of traffic. It concludes, therefore, that respondent had the authority to suspend petitioner's operating privileges when it was shown that he had violated Section 157(m) by permitting an unlicensed operator to operate his motor vehicle in the District.

We cannot agree with the government's contention. In urging that respondent has been granted whatever authority Congress delegated to the Commissioners, the government relies upon the grant of "full authority" in Section 1 of the order without regard to the limitations upon that authority contained in the same order. Although possessed of the power to suspend an operator's permit where there has been a breach of usual and reasonable traffic rules and regulations, the Commissioners have not delegated such sweeping authority to the Director of Motor Vehicles. Where there is no charge pending in the Traffic Branch of the Municipal Court, the Director of Motor Vehicles may suspend petitioner's operating permit for violating Section 157(m) only by virtue of the authority contained in Section 5(a) of the Commissioners' order.

We must next decide whether the evidence supports the conclusion that in permitting an unlicensed operator to operate his motor vehicle petitioner demonstrated that he was not "morally qualified to operate a motor vehicle in such manner as not to jeopardize the safety of persons or property."

Briefly, and insofar as is pertinent, the record indicates the following: On March 28, 1962, petitioner permitted his motor vehicle to be operated by one Campbell, a friend who had come to the District from Massachusetts in November 1961 to work for petitioner at his request. Campbell had been living in the District since his arrival but periodically returned to Massachusetts where he paid taxes. Sometime prior to March 28, 1962, Campbell's Massachusetts permit was revoked. However, on March 22, Campbell received a letter from the Massachusetts Registry of Motor Vehicles stating that his "privilege to operate motor vehicles in Massachusetts is hereby reinstated. Renewal application enclosed." Campbell filed the application and received a Massachusetts permit on April 3.

■ Petitioner testified before the hearing officer that he believed the letter from the Massachusetts Registry of Motor Vehicles reinstated Campbell's operating privileges as of that date, and that thereafter he permitted Campbell to operate his vehicle. Our review of the record convinces us that the evidence fails to support the conclusion that petitioner was not morally qualified to operate a motor vehicle in such a manner as not to jeopardize the safety of persons or property.

Reversed.