**UNITED STATES**
v.
**John W. CARTER.**
Crim. No. 220-67.

United States District Court
District of Columbia.
Nov. 13, 1967.

David N. Ellenhorn, Asst. U. S. Atty., Washington, D. C., for the United States.

James M. Bailey, Washington, D. C., for defendant.

## MEMORANDUM

GASCH, District Judge.

This matter came on for hearing before the Court, a trial by jury having been expressly waived by the defendant. The indictment charges the defendant with three counts: interstate transportation of a stolen motor vehicle, in violation of 18 U.S.C. § 2312; unauthorized use of a vehicle, in violation of 22 D.C. Code, § 2204; and illegal possession of a sawed-off shotgun, in violation of 26 U.S.C. § 5851.

Officer John D. Killian of the Metropolitan Police Department testified that he was patrolling the northeast market area on foot about 6:00 P. M. on the 1st of January, 1967, and that he observed a new Mercury sedan bearing Pennsylvania tags stopped at the mouth of an alley. The occupants of the car appeared to be looking the area over in a suspicious manner. He also observed trash or garbage being thrown from the vehicle. The officer testified that he did not take any action at this time. Shortly thereafter the vehicle was driven away.

Between five and six hours later, Officer Killian observed the same vehicle, in which there were three occupants, drive up and stop at approximately the same place. At this time, he was in a scout car with his partner, Officer Hall. Because the officers knew that there had been a recent holdup at a nearby restaurant and because the car was parked in what might be a convenient get-away

spot, Officer Killian decided to make a routine check on the occupants. He thereupon walked over to the car and asked the driver, the defendant in this case, for his driver's license and registration card. The defendant produced a Pennsylvania driver's license, which the officer later learned was issued to the brother of the defendant. The defendant then began to search his pockets, unsuccessfully, for the registration card. The officer suggested he look in the glove compartment. As the glove compartment was opened, the front portion of the vehicle was illuminated. The officer noticed on the floor of the car a portion of the barrel of a sawed-off shotgun. The officer ordered the driver and the two occupants to step out of the car, and when they were clear of the vehicle, he drew his weapon, placed them under arrest, and seized the shotgun. His partner then called for assistance.

After impounding the automobile, the officer checked it and found that it bore Serial No. 7W47Q500–957 and that it had been reported stolen.

It was stipulated by and between counsel that the Ravotti Mercury Sales Corporation was on January 1st, 1967, a corporation licensed to do business in the State of Pennsylvania, and further that this corporation operates a retail sales office in Leechburg, Pennsylvania, and is the owner of a 1967 two-door Mercury sedan bearing Serial No. 7W47Q500–957, which had been removed without permission from the owner's sales room the week previously in Leechburg, Pennsylvania. It was also stipulated that the sawed-off shotgun is not registered with the Secretary of the Treasury.

When the Government offered in evidence the sawed-off shotgun, defense counsel objected that there was no probable cause for the arrest and, therefore,

the exhibit should be suppressed. The defense also moved for a judgment of acquittal, or in the alternative, to require the Government to choose between Counts One and Two (charging respectively interstate transportation of a stolen motor vehicle and unauthorized use of a vehicle.) The Court reserved its ruling on all motions, and the defense proceeded to call the defendant, who testified that on January 1st, 1967, he was in the Seven-Eleven Club at Seventh and O Streets, N. W., at about 10:00 P. M. He said people were still in the holiday mood, and he was talking with two persons whom he had just met—John H. Waddy and Arthur Matthews Quarles. Thereafter, they left with a fourth man at the wheel whose name the defendant believes was Edward Anderson. The four drove to the northeast market area whereupon the car was stopped [1] at the mouth of an alley to permit the driver to leave for a personal errand. The driver did not return and shortly thereafter Officer Killian approached the vehicle and requested the defendant, who at that time was seated in the driver's seat, to produce his license and registration. The defendant stated that the officer directed him and the other occupants of this vehicle to step out, and shortly thereafter Officer Hall called out that he had found a sawed-off shotgun, at which time Officer Killian placed him under arrest.

■ On these facts the Court finds as follows: under the provisions of D.C. Code, § 40–301(c), the driver of a motor vehicle is required to produce his permit upon the request of a police officer. Driving a motor vehicle is a privilege, not a right.[2] A request by an officer to show a driver's permit and registration card does not constitute an arrest.[3] It is merely routine interrogation to as-

---

1. Sec. 79(c) 6 of the Traffic and Motor Vehicle Regulations for the District of Columbia makes it unlawful, with certain exceptions not relevant here, to park a vehicle in any public alley.

2. James v. Director of Motor Vehicles, D.C.App., 193 A.2d 209, rev'd on other

grounds 118 U.S.App.D.C. 357, 336 F. 2d 745 (1964). See also 7 Am.Jur.2d § 97.

3. Mincy v. United States, D.C.App., 218 A.2d 507 (1966).

certain whether the privilege of driving is being validly exercised.

■ During the course of this routine investigation to ascertain whether the defendant had the requisite permit and registration card, the officer observed the sawed-off shotgun partly concealed in the front part of the car. Having observed this prohibited weapon, he took the necessary action to effect an arrest by ordering the driver and other occupants out of the vehicle in accordance with the practice established in this jurisdiction and approved by our Court of Appeals.[4] In Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960), there was no determination as to when the arrest occurred. In *Rios*, the Government sought to justify a seizure of narcotics on the ground that it was incident to a lawful arrest. The Court remanded the case for an evaluation of the conflicting testimony on the issue of when the arrest occurred. Here, in accordance with the *Jefferson* case and the *Mincy* case, the Court finds that following the routine interrogation of the driver, the officer observed the prohibited weapon in plain view. It was only after this observation that the arrest was actually made. Accordingly, as to Count Three of the indictment, the Court considers the sawed-off shotgun properly admissible into evidence and finds the defendant guilty of Count Three.

■ With respect to Counts One and Two, the defendant's explanation that he had never seen the vehicle in question prior to the time one Anderson offered him a ride in it defies credulity. The vehicle in question was stolen from a Mercury dealer located within 20-some miles of defendant's home in Pennsylvania. The defendant has admitted that he went to school with the daughter of the owner of the agency, that he knew the location of Ravotti Mercury Sales and had been there on prior occasions. That a vehicle stolen a week previously from an agency located within twenty miles of his home would subsequently be offered to him for transportation in Washington is too circumstantial for belief. Under these circumstances, the Court will draw a permissible inference that this recently stolen vehicle was unlawfully transported by the defendant across state lines and, in accordance with the testimony of the police officer, was driven by the defendant in the District of Columbia.[5]

Accordingly, the Court also finds the defendant guilty of Counts One and Two.

---

4. See Jefferson v. United States, 121 U.S. App.D.C. 279, 349 F.2d 714 (1965), wherein the Court of Appeals approved the arrest of the defendant for possession of a prohibited weapon, namely, a blackjack, following the observation of this weapon when the police went to a stopped vehicle for the purpose of making a routine check. The opinion of Judge Edgerton in Bowling v. United States, 122 U.S.App.D.C. 25, 350 F.2d 1002 (1965), recognizes the implication in Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431 (1960), that "if the police approached a *standing* car 'only for the purpose of routine interrogation, and * * * had no intent to detain the petitioner beyond the momentary requirements of such a mission,' it would not be an arrest." Bowling, 122 U.S.App.D.C. at 26, 350 F.2d at 1003. The problem of whether halting a *moving* vehicle for a routine check of license and registration necessarily constitutes an arrest is not present in this case. See Bowling v. United States, supra, opinions of Edgerton, J., and Washington, J., and Lipton v. United States, 348 F.2d 591 (9th Cir. 1965). See also the concurring opinion of Judge Leventhal in Bailey v. United States, D.C.Cir., (Dec. 14, 1967).

5. See Travers v. United States, 118 U.S. App.D.C. 276, 335 F.2d 698 (1964).