**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**L. C. WARE, Defendant-Appellant.
No. 71–1380.**

United States Court of Appeals,
Seventh Circuit.

March 29, 1972.

LeRoy Dakich, Gary, Ind., for defendant-appellant.

William C. Lee, U. S. Atty., John R. Wilks, Asst. U. S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

Before KNOCH, Senior Circuit Judge, and KILEY and STEVENS, Circuit Judges.

KNOCH, Senior Circuit Judge.

Defendant-appellant, L. C. Ware, was convicted in a jury trial on a two-count Information, charging violations of Title 18, U.S.C. §§ 2312, 2313, transport of a known stolen vehicle from Blue Island, Illinois, to Gary, Indiana, and receipt or concealment of a known stolen motor vehicle moving in interstate commerce. He was sentenced to a term of five years on each count, to run concurrently. This appeal followed. We affirm.

It is defendant's contention on appeal that the Trial Judge improperly denied his motion to suppress the confidential vehicle inspection number which Gary police officers ascertained from inspection of the frame of the motor vehicle described in the Information.

Transcript of the testimony and evidence heard by the Trial Judge prior to

his denial of the motion is a part of the record before us.

It is defendant's position that the officers seized the automobile without warrant, and unreasonably searched it without probable cause to believe that it was contraband, stolen, used, or possessed with intent to be used, in committing a crime, or itself evidence of an offense, and that defendant himself was subjected to a sham arrest solely as a pretext to search the automobile in a further warrantless search carried out in the police garage at a time when defendant was in custody and no personal danger or risk of loss of the automobile existed.

This Court will not, of course, weigh the evidence and findings concerning credibility. United States v. Iacullo, 7 Cir., 1955, 226 F.2d 788, 795, cert. den. 350 U.S. 966, 76 S.Ct. 435, 100 L.Ed. 839.

The evidence would support a finding of the following set of facts. Patrolman Anthony William Green, of the Gary, Indiana, Police Department, received an anonymous telephone communication that a 1963 white over gold Cadillac, parked at 16th and Pierce, in Gary, was possibly a car stolen from Illinois. Officer Green did find an automobile of that description at that location. With Detectives Allen and Gibson, he maintained surveillance, remaining in contact via "walkie-talkie" radio communication. Officer Green saw the defendant, whom he knew by name, get into and drive away in the suspected automobile, and he followed.

While en route, Officer Green checked the license plate numbers by radio and learned they were registered to an Arthur Berry. He stopped the automobile defendant was driving by pulling up alongside it, introduced himself to defendant as a police officer, displaying his badge through the car window. One of the conflicts in the evidence concerned this aspect of the case. Defendant and his companion testified that they already parked the automobile and

left it when Officer Green drove up. Detective William J. Allen, who had followed Officer Green in a police car arrived immediately, within 30 to 45 seconds. Detective Allen had observed the defendant driving the suspected automobile. He knew that defendant's driving privileges had been suspended and that defendant had previously been given a traffic ticket for unlawful operation of a motor vehicle. He told Officer Green that defendant had no driver's license.

Officer Green asked defendant for his license and registration and checked the identification plate on the car door. Defendant produced a driver's license in the name of Larry Ellington and a registration in the name of Arthur Berry, neither of which, the officers knew, was defendant's own name. Defendant was placed under arrest for unlawful operation of a motor vehicle. The vehicle was towed directly to the police garage, where Officer Green and Detective Allen immediately checked the confidential vehicle identification number stamped on the frame of the motor vehicle, check of which would not have been practicable while the suspected automobile was blocking a moving lane of traffic on the road.

The number was run through the National Crime Information Center and proved to be that of a vehicle stolen in Blue Island, Illinois.

Checking the serial number of an automobile by opening a door or lifting the hood over the motor has been held not to be a search. Cotton v. United States, 9 Cir., 1967, 371 F.2d 385, 392; Pasterchik v. United States, 9 Cir., 1968, 400 F.2d 696, 700, cert. den., 395 U.S. 982, 89 S.Ct. 2142, 23 L.Ed.2d 770, where the officer has a legitimate reason to identify the automobile. The Ninth Circuit adds a caution (footnote 5) against breaking into a locked car without a warrant, but that is not the case here.

In United States v. Nikrasch, 7 Cir., 1966, 367 F.2d 740, on which defendant relies, the facts were quite different.

Defendant there was arrested for disorderly conduct pursuant to a Village Code provision prohibiting driving about the streets by persons who were not able to give a satisfactory account of themselves. A similar statute was held to be unconstitutionally vague in United States v. Margeson, E.D.Pa.1966, 259 F. Supp. 256, 268. At least eight hours after the arrest, the police checked the automobile in which defendant had been driving, from which a number of items, including money bags, hacksaw and screw driver, had been found in an earlier search at the scene of the arrest. The defendant had awakened suspicion because he had inquired whether there were any laundromats open at that hour (1:00 A.M.) and the police had been alerted to watch for burglars who were robbing laundromats in the area.

The motion to suppress in *Nikrasch* was directed to the automobile itself and all the items found therein. The later discovery of a false serial plate number and the true identification number of the automobile triggered a confession of theft by the defendant. He was convicted of stealing the automobile in a bench trial.

This Court reversed the conviction in *Nikrasch* which was based on evidence which included the false and true serial numbers, which the Trial Judge held to be the fruit of a search incidental to a lawful arrest. No objection was made to the receipt of these numbers and the then recent decision in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777, was not brought to the Trial Judge's attention (367 F.2d 744). Again, that is not the case before us.

■ Indiana Statutes require display of license and registration on request of a police officer. Burns, Indiana Statutes Annotated, 47–2714, 47–2605, IC 1971, 9–1–4–40, 9–1–4–5. Such a request constitutes a routine investigation and not an arrest. United States v. Carter, D.D.C.1967, 275 F.Supp. 769, 770. The government does not contend that the confidential vehicle identification number was secured in a search incidental to a lawful arrest.

■ When defendant presented a driver's license and a registration which the officers knew did not belong to him, in the light of the information already available to them, they had good reason to suspect that the automobile also did not belong to the defendant. Having received some corroboration of the anonymous caller's statements, the police officers would have been remiss in their duty had they failed fully to identify the automobile. Unlike the police in Amador-Gonzalez v. United States, 5 Cir., 1968, 391 F.2d 308, 313 (also cited by defendant) the officers here were not searching for narcotics or other contraband, possibly hidden in a vehicle, after arresting the driver on a minor traffic violation, where there was no probable cause to believe the vehicle was transporting narcotics.

The Trial Judge in denying the motion to suppress held that the totality of the circumstances was sufficient to give the officers the right to search, if, indeed, this was a search. We agree.

However, we are satisfied that this was not actually a search, but a mere check on the identification of an automobile which could not be practicably accomplished at the scene in the street, blocking traffic. There was no delay. Officer Green testified that the check was made as soon as they got to the police garage.

The judgment of the District Court is affirmed.

Affirmed.

KILEY, Circuit Judge (dissenting).

I respectfully dissent.

I disagree that the police action was a mere inspection and not a search. "A search implies an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action. The term implies exploratory investigation or quest." Haerr v. United States, 240 F.2d 533,

535 (5th Cir. 1957). The authority relied upon by the government, Pasterchik v. United States, 400 F.2d 696 (9th Cir. 1968), does not support the inspection theory on the facts before us. The *Pasterchik* court, at 700, on authority of its own Cotton v. United States, 371 F.2d 385, 394 (9th Cir. 1967), said that a policeman need not obtain a warrant to "open a door to check the serial number, or open the hood to check the motor number" if he has "reasonable cause to believe that a car has been stolen, or has any other legitimate reason to identify a car" where the car is already lawfully available to him. Here, in my opinion, there was no reasonable cause to believe the car driven by Ware was stolen.

I agree that the first link in the chain of circumstances involved prudent police work in checking out the anonymous phone call.

I also agree that the arrest of Ware for driving without a license is valid. Green knew the driver of the car was Ware. The check of the state license showed Ware did not own the car. Green also knew that the driver's license which Ware proffered was false on its face. Then Allen arrived and told Green that Ware had previously forfeited his own driver's license for a traffic violation.

Ware and his girl friend were taken to the police station and the car was towed to the police garage. The warrantless search followed immediately.

Ware's traffic offense did not substantiate the anonymous tip, and the Fourth Amendment requires more than an anonymous phone call "tip" to justify a search. *See* Spinelli v. United States, 393 U.S. 410, 418, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

The police needed no further evidence, when the search was made, to support their case against Ware for driving without a license. And the only prior offense of Ware known by the police at the time of Ware's arrest was his prior conviction for driving without a license. The search was therefore for evidence to substantiate the annoymous tip. It is noteworthy that the police also searched the trunk and the interior of the car while looking for the confidential vehicle identification number. In my opinion the search was unreasonable under Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

In *Preston* an anonymous call was made to police. They checked it out and arrested Preston for vagrancy. He and the car were taken to the station where he was booked for vagrancy. His car was towed to a garage. The police, when they searched the car, had no reasonable belief that he had participated in any crime other than vagrancy. As in the case before us, the police could not have obtained a valid warrant to search the car.

The police here searched the car immediately after arriving at the station. At this point they had no knowledge which would justify a reasonable belief that the car was stolen, much less that it was stolen in another state. There was only an anonymous tip to the effect that it was stolen. The police could not have procured a valid search warrant upon the knowledge they had when Ware was arrested, *see Spinelli, Aguilar* and *Harris, supra,* and could not validly have searched the car without a warrant except to protect themselves or evidence.

The police in *Preston* seized loaded guns in the glove compartment of the car and thereafter seized other incriminating items in the car trunk. The evidence was used to convict Preston and others of conspiracy to rob a bank. The Supreme Court, reversing, rejected the contention that the search was reasonable as incident to the arrest. The Court stated that once a person is under arrest and in custody, a search made at another time and place without a warrant is not incident to an arrest. *Pres-*

ton, *supra,* at 367, 84 S.Ct. 881, 11 L. Ed.2d 777. The Court thought that when the search was made at the garage there was no danger that Preston or his companion could have used any weapons in the car or could have destroyed any evidence or could have driven the car out of the jurisdiction. The Court found that the facts did not bring the search under any of the exceptions to the constitutional rule justifying a warrantless search. The *Preston* case closely parallels the case before us.

A warrantless search is per se unreasonable and the government bears a heavy burden of proof in establishing that the search comes within an exception to the constitutional rule. Coolidge v. New Hampshire, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). It is my view that the government has not carried the heavy burden successfully, that the district court erred in not sustaining Ware's motion to suppress the identification number seized in the unreasonable search, and that the use of that number and the evidence derived from its use to convict Ware was constitutional error.

This is not a Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), case where the arrest was upon probable cause of armed robbery and where the search of the car would have been justified on the highway as incidental to the arrest. Nor is United States v. Castaldi, 453 F.2d 506 (7th Cir., 1971), of aid to the government. There, because two of Castaldi's companions were at large at 3:00 A. M., the automobile was a "fleeting target" under the rule of Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), with possible danger to the police and evidence.

Here, there was no danger to the police since the car was searched at the police garage. It was not a "fleeting target." Nor was there any possibility that the arrested Ware could destroy any evidence. Furthermore, it would be unreasonable for the government to argue that any incriminating evidence could be in the car which would aid in the prosecution of Ware for driving without a license, since the police already had seen him driving and had known that he did not have a license. The search was a general warrantless search for evidence of another crime.

I would reverse the conviction.