Lebanon District Court
No. 2005-717

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL LICKS

Argued: October 26, 2006
Opinion Issued: December 6, 2006

*Kelly A. Ayotte*, attorney general (*Karen A. Gorham*, assistant attorney general, on the brief, and *Thomas D. Ralph*, assistant attorney general, orally), for the State.

*DesMeules, Olmstead & Ostler*, of Norwich, Vermont (*George H. Ostler* and *Christopher A. Dall* on the brief, and *Mr. Ostler* orally), for the defendant.

HICKS, J. The defendant, Michael Licks, appeals his conviction in the Lebanon District Court (*Cirone*, J.) for driving while intoxicated (DWI), *see* RSA 265:82 (2004). He argues that the district court erred in denying his motion to suppress evidence obtained after he was unlawfully seized. We affirm.

The record supports the following. On February 18, 2005, between 12:00 a.m. and 12:30 a.m., Officer Michael Roberts of the Lebanon police department was on patrol in the parking lot of Club Electra when he noticed a parked car with its engine running.

Officer Roberts further noticed the defendant "slouched down" in the driver's seat of the vehicle; there were no other occupants in the car. The

car was legally parked, front end to the curb, and there were cars parked on either side. Officer Roberts decided to approach the defendant to "check on what he was doing" and to "make sure he was all set." Unable to find a parking space in the full lot, Officer Roberts parked his cruiser on the road, at the entrance to the parking lot. With his flashlight trained on the car and the defendant, Officer Roberts approached the defendant's vehicle from the rear and walked to the driver's side. When Officer Roberts reached the driver's side door, the defendant rolled his window down and Officer Roberts asked if he was "all set." It is not clear whether Officer Roberts motioned for the defendant to roll down his window or whether the defendant did so without being prompted. In any event, Officer Roberts testified that he did not tap on the window with his flashlight in order to get the defendant's attention. When the defendant rolled down his window, Officer Roberts immediately noticed signs of intoxication. After asking the defendant for his name and date of birth, Officer Roberts asked him to step out of the car. Officer Roberts subsequently conducted field sobriety tests on the defendant who was then arrested for DWI.

The defendant filed a motion to suppress, arguing that he was unlawfully detained. After a hearing, the district court denied the motion. On appeal, the defendant argues that he was unlawfully seized in violation of RSA 594:2 (2001), Part I, Article 19 of the New Hampshire Constitution and the Fourth Amendment of the United States Constitution. The defendant contests his detention up until the point when Officer Roberts noticed signs of impairment and asked him to step out of the car.

"When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's findings unless they lack support in the record or are clearly erroneous. Our review of the trial court's legal conclusions, however, is *de novo*." *State v. MacElman*, 149 N.H. 795, 797 (2003) (quotation omitted).

We first address the defendant's claim under RSA 594:2 and the State Constitution, *State v. Ball*, 124 N.H. 226, 232 (1983), and cite federal opinions for guidance only. *Id.* at 232-33. The defendant argues that he was seized by Officer Roberts because a reasonable person under the circumstances would not "have felt free to ignore the officer or leave the area." RSA 594:2 provides: "A peace officer may stop any person abroad whom he has reason to suspect is committing, has committed or is about to commit a crime, and may demand of him his name, address, business abroad and where he is going." Part I, Article 19 of the State Constitution prohibits unreasonable searches and seizures. N.H. CONST. pt. I, art. 19. A warrantless seizure is *per se* unreasonable unless it falls within a

recognized exception to the warrant requirement. *State v. Brunelle*, 145 N.H. 656, 659 (2000).

The State argues that the defendant was not seized because his encounter with Officer Roberts was consensual, and therefore the State was not required to establish an exception to the warrant requirement.

■ A police encounter with a citizen does not always amount to a seizure of the person. *State v. Beauchesne*, 151 N.H. 803, 809 (2005). So long as a reasonable person would feel free to leave, *State v. Riley*, 126 N.H. 257, 262-63 (1985), or terminate the encounter, *State v. McKeown*, 151 N.H. 95, 97 (2004), the citizen is not seized under Part I, Article 19 of the State Constitution. "[A seizure] occurs when an officer, by means of physical force or show of authority, has in some way restrained the liberty of the person." *Beauchesne*, 151 N.H. at 810.

> Circumstances indicating a "show of authority" might include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Id.* This test is an objective one, considering how a reasonable person in the defendant's position would have understood his situation. *Id.*

■ Numerous courts recognize that when an officer approaches a person seated in a parked car and asks questions, this in and of itself does not constitute a seizure. *See* 4 W. LAFAVE, SEARCH AND SEIZURE § 9.4(a), at 420 n.49 (4th ed. 2004) (collecting cases). The encounter can become a seizure, however, if the officer uses physical force or displays a show of authority to restrain the liberty of the person in the vehicle. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991). We find these principles to be consistent with our case law applying Part I, Article 19 of the State Constitution and apply them here.

Officer Roberts approached the defendant in a parked vehicle, with a curb in front and parked cars on either side. While the defendant's freedom of movement was limited because he was in a vehicle that was blocked to the front and on both sides, these restrictions were not the result of the officer's actions. *See id.* at 436. Therefore, the relevant inquiry is not whether a reasonable person in the defendant's position would have felt free to leave, but whether he would have felt free to "terminate the encounter" with Officer Roberts. *McKeown*, 151 N.H. at 97; *Bostick*, 501 U.S. at 436 (where defendant was questioned on bus by police, appropriate inquiry was whether reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter).

Looking at the totality of the circumstances, as well as the "show of authority" factors we applied in *Beauchesne*, we hold that the defendant was not seized when Officer Roberts approached his vehicle. Only one officer approached the defendant. He parked his cruiser away from the defendant's vehicle, and did not turn on his blue lights. He approached the car from the rear and shined his flashlight into the defendant's vehicle. He did not draw his weapon, and did not order the defendant to step out of the car, or even to roll down his window, but rather asked if the defendant was "all set." Although at the suppression hearing, Officer Roberts could not remember exactly what he said or did to get the defendant's attention, he stated that he would not have "tap[ped] on the window with a flashlight." In any event, the defendant rolled down his window, at which point Officer Roberts immediately noticed signs of intoxication and subsequently asked the defendant to step out of the car.

■ Officer Roberts' actions would not have led a reasonable person to believe that he must submit to the officer's requests. Although he approached the car from the rear and shined his flashlight into the defendant's vehicle, this alone does not sufficiently constitute a "show of authority." *See People v. Erby*, 572 N.E.2d 345, 348 (Ill. App. Ct. 1991); *see also Texas v. Brown*, 460 U.S. 730, 739-40 (1983) (Rehnquist, J.) ("It is likewise beyond dispute that [the officer's] action in shining his flashlight to illuminate the interior of [the defendant's] car trenched upon no right secured to the latter by the Fourth Amendment."). We hold that before Officer Roberts noticed visible signs of impairment and ordered the defendant out of the car, the encounter was consensual and therefore did not violate RSA 594:2 or the New Hampshire Constitution. *Accord, United States v. Ortiz-Monroy*, 332 F.3d 525, 527-28 (8th Cir. 2003) (no seizure where officer approached defendant's parked car and knocked on the window); *State v. O'Neill*, 62 P.3d 489, 497-99 (Wash. 2003) (no seizure where officer shined cruiser spotlight on defendant's parked car approached the car while shining flashlight into it, asked defendant to roll his window down, and requested identification); *Commonwealth v. Eckert*, 728 N.E.2d 312, 316 (Mass. 2000) ("[B]y walking up to the defendant's parked vehicle at the rest area, knocking on the window, shining his flashlight inside and asking whether the defendant was 'all set,' [the] Trooper ... did not engage in any conduct that requires constitutional justification ...."); *State v. Baez*, 894 So. 2d 115, 115-16 (Fla. 2004) (no seizure where officer approached defendant's car while shining flashlight inside, knocked on window with flashlight, and asked if defendant was alright).

The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. *Boslick*, 501 U.S. at 436; *McKeown*, 151 N.H. at 97. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.